IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JAMIE EMERSON NEW, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:14-cv-01139-STA-dkv |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER REVERSING THE DECISION OF THE COMMISSIONER AND
REMANDING PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)**

Plaintiff Jamie Emerson New, Jr., filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for child disability insurance benefits under Title II of the Social Security Act, ("the Act"), 42 U.S.C. 402(d). The application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on November 29, 2012. On February 12, 2013, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **REVERSED**, and the action is **REMANDED** for additional testimony pursuant to sentence four of 42 U.S.C. § 405(g).

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

1

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7] "[W]hen there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration."[8]

Pursuant to sentence four, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court may immediately award Plaintiff benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."[9] "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking."[10] These factors are not present in this case, and, therefore, an immediate award of benefits is not appropriate. However, a remand pursuant to sentence four of § 405(g) is appropriate because all essential issues have not been resolved.

Plaintiff was born on February 15, 1983. He received special education services for the mentally retarded through the Jackson-Madison County School System. He has no gainful employment and was in prison for seven years. Plaintiff alleges disability based on mental retardation (now called intellectual disability). Plaintiff lives with his uncle due to the death of his father. Plaintiff alleges that he is entitled to child disability insurance benefits on his

---

[8] *Faucher v. Secretary*, 17 F.3d 171, 175 (6th Cir. 1994).

[9] *Id.* at 176 (citations omitted).

[10] *Id.*

deceased father's account.[11] The relevant period in this case runs between Plaintiff's alleged onset of January 1, 2001, and his twenty-second birthday on February 13, 2005.

The ALJ made the following findings: (1) Plaintiff had not attained age twenty-two as of January 1, 2001, his alleged onset date; (2) Plaintiff has not engaged in substantial gainful activity since his alleged onset date; (3) prior to attaining age twenty-two, Plaintiff had the following severe impairment: borderline intellectual functioning; (4) prior to attaining age twenty-two, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; (5) prior to attaining age twenty-two, Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, with the following nonexertional limitations: he could understand and remember simple one-two step tasks but could not make independent decisions at an executive level; he could sustain concentration and persistence for simple one-two tasks during an eight-hour workday with customary breaks; he could interact with supervisors, coworkers, and the public within the restrictions above; he could set goals and adapt to infrequent changes; (6) Plaintiff has no past relevant work; (7) Plaintiff was seventeen, which is defined as a younger individual, on his alleged disability onset date; (8) Plaintiff has a limited education and is able to communicate in English; (9) transferability of job skills is not an issue in this case because Plaintiff does not have past relevant work; (10) prior to attaining age twenty-two, considering his age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers

---

[11] *See* 20 C.F.R. § 404.350 (2014) (stating that a person is entitled to disability benefits on the earnings record of a deceased person if they, *inter alia*, "have a disability that began before you became 22 years old").

in the national economy that Plaintiff could perform; (11) Plaintiff was not under a disability, as defined in the Act, at any time prior to the date he attained the age of twenty-two.[12]

"Under Section 402(d) of Title 42 of the United States Code, a person is eligible for child insurance benefits if that person files an application, is unmarried and under 18 years of age or suffers from a disability incurred before reaching age 22, and was dependent upon an eligible wage-earner who died, became disabled, or was entitled to old age insurance."[13] The statutory standard for determining disability under this section is the same standard as that used in adult disability claims.[14]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[15] The claimant bears the ultimate burden of establishing entitlement to benefits.[16] The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[17]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

---

[12] R. 14 – 22.

[13] *Houck v. Comm'r of Soc. Sec.*, 359 F. Supp.2d 631, 631 (E.D. Mich. 2005).

[14] *Sullivan v. Zebley*, 493 U.S. 521, 529 (1990) (citing 42 U.S.C. § 1382c(a)(3)(A) & (B)).

[15] 42 U.S.C. § 423(d)(1).

[16] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[17] *Id.*

5

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[18]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[19] Here, the sequential analysis proceeded to the fifth step. The ALJ found that, although Plaintiff had no past relevant work, there were other jobs existing in significant numbers in the national economy that Plaintiff could perform.

Plaintiff contends that the ALJ erred at step three of the sequential analysis in finding that, prior to attaining age twenty-two, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. At step three, claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the Agency's list of impairments or that is at least equal in severity to those listed.[20] The list identifies and defines impairments that are of sufficient severity as to prevent any gainful

---

[18] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[19] 20 C.F.R. § 404.1520(a).

[20] 42 U.S.C. § 404.1520(a)(4)(iii), (d).

activity.[21] A person with such an impairment or an equivalent necessarily satisfies the statutory definition of disability.

The burden of proof at the listing level of the sequential evaluation process is on the claimant. In order for a claimant to show that his impairment matches a listing, the impairment must meet specified medical criteria.[22] "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."[23] Additionally, "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar impairment."[24] "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment."[25]

Here, Plaintiff contends that he meets or equals Listing 12.05(C) which defines mental retardation and provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. [26]

In order to meet Listing 12.05(C), a claimant's impairment must satisfy the diagnostic description in the introductory paragraph to 12.05 and the criteria in paragraph C of 12.05 (A

---

[21] *See Zebley*, 493 U.S. at 532.

[22] *Id.* at 530.

[23] *Id.* 530.

[24] *Id.* at 531.

[25] *Id.*

[26] 20 C.R.F. Part 404, Subpart P, Appendix 1, § 12.05.

7

valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function....)[27] Thus, Listing 12.05(C) involves three criteria: (1) intellectual disability (f/k/a mental retardation), i.e., significantly subaverage general intellectual functioning with deficits in adaptive behavior[28] initially manifested before the age of twenty-two; and (2) an IQ of 70 or below; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.[29] A claimant may meet or equal Listing 12.05(C) only if he meets or equals all three elements.[30]

In the present case, the ALJ determined that there was "insufficient evidence in the record to establish the claimant met or equaled the requirements of either 12.05(A), (B), (C) or (D) during the pertinent period."[31] She acknowledged that Plaintiff had several IQ tests scores below 70 but found that Plaintiff did not have the deficits in adaptive functioning or the "other" required impairment sufficient to meet Listing § 12.05. The ALJ believed that Plaintiff's level of adaptive functioning was not consistent with the presence of an intellectual disability, in part, because Plaintiff could care for his own personal needs, cook, perform household chores, attend church, use public transportation, and read newspapers.

---

[27] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (Introduction).

[28] Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills. *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993).

[29] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C.

[30] 20 C.F.R. §§ 404.1525-1526; *West v. Commissioner*, 2007 WL 1991059 (6th Cir. July 5, 2007) (explaining that a claimant must make three showings to satisfy Listing 12.05(C)).

[31] R. 17.

The Court finds that the determination that Plaintiff did not show deficits in adaptive behavior before the age of twenty-two is not supported by substantial evidence. The record is replete with evidence contrary to the ALJ's finding. For example, Plaintiff exhibited signs of delusional and paranoid thinking at the age of twelve and was diagnosed with psychosis.[32] According to medical records from Joseph Montgomery, M.D., Plaintiff had a rambling demeanor and claimed that he had possession of gold worth one million dollars and that other boys had killed a person looking for this gold.[33]

The Memphis City School System psychologist noted that Plaintiff met the special education criteria for mental retardation and that his adaptive functioning was severely limited.[34] Plaintiff had a development age of five years. He showed marked inappropriate behavior, including threatening teachers, had temper tantrums and violent outbursts, paced and ranted for hours, and collected bottles of urine.[35] Records from an in-patient stay at Charter Lakeside Hospital showed aggression, impulsivity, acting out, and a poor integrated personality.[36]

Plaintiff's adaptive functioning was measured by administration of the Vineland Adaptive Behavior Scales. Plaintiff's adaptive behavior scores were extremely low with a composite score poorer than 99% of the population.[37] Additionally, Plaintiff was in prison

---

[32] R. 337-38, 346.

[33] *Id.*

[34] R. 290, 294.

[35] R. 290-93.

[36] R. 285-86.

[37] R. 294.

during at least part of the relevant time period. As noted by Plaintiff, incarceration for aggravated assault is evidence of a deficit in adaptive behavior.

Dr. Gregory Meeks, Ph.D., diagnosed schizotypal disorder and mild mental retardation as follows:

> Plaintiff also meets the DSM-IV criteria for Schizotypal Personality Disorder because he displays a pervasive pattern of social and interpersonal deficits marked by a reduced capacity for interpersonal relationships as well as by cognitive or perceptual distortions and eccentricities of behavior, as manifested by:
>
> 1. Bizarre fantasies and preoccupations
> 2. Odd thinking and speech
> 3. Suspiciousness or paranoid ideation
> 4. Behavior that is odd, eccentric or peculiar
> 5. Lack of close friends or confidants[38]

The fact that Plaintiff could take care of some of his personal needs, ride public transportation, and read the newspaper does not mean that he did not have deficits in his adaptive functioning during the relevant period as shown by the above evidence in the record.[39] Moreover, the Court does not agree with the ALJ's finding that the fact that Plaintiff "spends many hours a day walking around and collecting cans to sell" is "inconsistent with his allegations of disabling mental … impairments."[40]

Furthermore, individuals performing in the mild mental retardation range may be capable of performing activities such as those performed by Plaintiff.

---

[38] R. 291.

[39] *See Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 463 (6th Cir. 2012) (noting that activities such as the use of public transit, making change at a grocery store, doing laundry, cleaning, limited reading comprehension, or the ability to keep records of work activity are not necessarily inconsistent with mental retardation).

[40] R. 19.

> People with this level of Mental Retardation typically develop social and communication skills during the preschool years (ages 0-5) years), have minimal impairment in sensorimotor areas, and often are not distinguishable from children without Mental Retardation until a later age. By their late teens, they can acquire academic skills up to approximately the sixth-grade level. During their adult years, they usually achieve social and vocational skills adequate for minimum self support, but they need supervision, guidance and assistance, especially under unusual social or economic stress. With appropriate supports, individuals with Mild Mental Retardation can usually live successfully in the community, either independently or in supervised settings.[41]

On remand, the extent to which Plaintiff's daily activities evidence deficits in adaptive functioning or a lack thereof must be clarified, and the ALJ should reassess whether Plaintiff met Listing 12.05's criterion of deficits in adaptive functioning prior to his twenty-second birthday based on the entire record concerning his behavior.

As for evidence of an "other" mental impairment necessary to meet the third requirement of Listing 12.05(C), Plaintiff has pointed to his diagnosis of schizotypal personality disorder.[42] On remand, the ALJ should consider whether this impairment imposes an additional and significant work-related limitation of function on Plaintiff.

Listing 12.05(C) also requires a finding of an IQ score of 70 or below during the relevant time period. Substantial evidence does not support that ALJ's finding that the testing showing below 70 scores was unreliable. The ALJ rejected some of Plaintiff's qualifying IQ scores because he was "only thirteen years old at [the] time those scores were obtained, which was before his intellectual abilities had fully developed.[43] The ALJ's reliance on Plaintiff's young age at the time of his initial testing to reject his low IQ socres is misplaced. "Disregarding the

---

[41] *Diagnostic and Statistical Manual of Mental Disorders*, 4th ed. (American Psychiatric Association).

[42] R. 291. The ALJ acknowledged this diagnosis in her opinion. R. 18.

[43] R. 17. Plaintiff's earliest IQ test of record in 1995 showed a verbal IQ of 69, a practical IQ of 74, and a full scale IQ of 69. R. 285.

11

scores on this ground misconstrues the relevance of the scores; indeed, an older score was relevant to establish the manifestation of [Plaintiff's] impairment before the age of 22."[44]

The ALJ rejected "IQ scores in the record from a later date … for the same reasons outlined above."[45] However, other than pointing out Plaintiff's age at the time of one IQ test, she did not adequately explain why the later tests were unreliable under Listing 12.05(C). Instead, she relied on testing undertaken when Plaintiff was eighteen that showed a verbal score of 75, a performance score of 74, and a full scale 72.[46] As noted by Plaintiff, this testing was conducted within days of Plaintiff's being tested by the same instrument, and thus, a "practice effect" may have been indicated.[47] The first test had shown a verbal IQ of 64, a performance IQ of 69, and a full scale IQ of 64.[48] On remand, Plaintiff's IQ scores should be reassessed to determine the validity and reliability of those scores.[49]

---

[44] *Dragon*, 470 F. Appx at 461 (rejecting the ALJ's disregard for the claimant's low IQ scores on the ground that the testing had been performed when he was fourteen). *But see* 20 C.F.R. 20 C.F.R. pt. 404, subpt. P, app 1, § 12.00D (IQ test scores stabilize at age 16; scores prior to age 16 are valid for only two years).

[45] *Id.*

[46] *Id.* (citing R. 290).

[47] "'The practice effect refers to gains in IQ scores on tests of intelligence that result from a person being retested on the same instrument.' [American Association on Intellectual and Developmental Disabilities "AAIDD"] Manual at 38. According to the AAIDD, 'established clinical practice is to avoid administering the same intelligence test within the same year to the same individual because it will often lead to an overestimate of the examinee's true intelligence.' *Id.*" *United States v. Montgomery*, 2014 WL 1516147 at *28 (W.D. Tenn. Jan. 28, 2014) (explaining the concept of "the practice effect" in the context of a criminal matter).

[48] R. 286.

[49] *See Brown v. Sec. of Soc. Sec.*, 948 F.2d 268, 270 (6th Cir. 1991) (The claimant's "biography fits squarely within the DSM–III–R profile of a mildly retarded individual. We also note that the Secretary could have administered a second I.Q. test were he certain of the invalidity of [the claimant's IQ] scores.") *See also Rineholt v. Astrue*, 617 F. Supp. 2d 733, 744 (E.D. Tenn. 2009)

The Social Security Administration also provides for a finding of disability when a claimant has an impairment equivalent in severity to a listing.[50] As noted by Plaintiff, IQs in the range of 70-75 in the presence of other physical or mental disorders (in this case, schizotypal disorder) that impose additional and significant work-related limitation of function may support an equivalence determination.[51] On remand, the ALJ should consider whether Plaintiff's impairment is equivalent in severity to Listing 12.05(C).

Finally, Plaintiff contends that the ALJ erred in not seeking an updated medical expert opinion to determine if his impairment is equivalent to a listed impairment. Social Security Ruling 96–6p provides, in relevant part:

> [A]n administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> [1.] When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> [2.] When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.[52]

---

("[W]hen other portions of the record support the finding of mental retardation, an ALJ may be in error to reject IQ scores that support such a finding.")

[50] *See Foster*, 279 F.3d at 355 ("A claimant can demonstrate that she is disabled because her impairments are equivalent to a listed impairment by presenting 'medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" (quoting *Zebley*, 493 U.S. at 531).)

[51] *C.f. Foster*, 279 F.3d at 355 ("Given that Foster has failed to present any evidence showing 'significantly subaverage general intellectual functioning with deficits in adaptive functioning' prior to the age of 22, there is also substantial evidence to support the ALJ's conclusion that Foster's impairments do not equal the listing for mental retardation.")

[52] SSR 96–6p (internal footnote omitted).

The ruling "requires an update when either (1) there is evidence of symptoms, signs[,] and findings that suggest to the ALJ or Appeals Council that the applicant's condition may be equivalent to [Section 12.05]; or (2) when additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment does not equal the listings [in Section 12.05]."[53] On remand, the ALJ should obtain the testimony of a medical expert as to whether Plaintiff's impairment is equivalent in severity to Listing 12.05(C).

Having determined that substantial evidence does not support the ALJ's decision and the decision must be reversed, the Court must determine whether it is appropriate to remand this case or to direct the payment of benefits. Because the record does not establish that Plaintiff is entitled to benefits or that all essential facts have been resolved, it is appropriate to remand this case for further proceedings. Accordingly, the decision of the Commissioner is **REVERSED**, and the action is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for another hearing consistent with this order.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 6, 2017.

---

[53] *Kelly ex rel. Hollowell v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 830 (6th Cir.2009) (internal quotation marks omitted).